State of Iowa, Appellee, v. Francis Gustoff, Appellant.

No. 40999.

DECEMBER 17, 1931.

O. W. Harris, County Attorney, and John Fletcher, Attorney-general, for appellee.

R. G. Howard and Chas. E. Hird, for appellant.

EVANS, J.—The assignments are all-embracing and therefore quite indiscriminate. Because of one untoward episode occurring at the trial, it becomes our clear duty to award a new trial; and we shall have no occasion to consider other features of the case.

The defendant is a boy eighteen years of age. The prosecutrix is Amy Kirk, fifteen years of age. The defendant was first arrested on a charge of seduction preferred by Doris Kirk, older sister of Amy, and over the age of consent. The evidence on behalf of the State disclosed that the defendant himself was his own first accuser. On the charge of seduction of Doris, he was arrested and taken into a private conference with the sheriff and county attorney and that prosecutrix. This conference was held in the grand jury room at the courthouse. The primary purpose of that conference was to induce the defendant to marry the prosecutrix, Doris. He denied quite vehemently his responsibility for her condition and refused to marry her. It is made to appear from the testimony on behalf of the State, including that of the sheriff, that with his denials of responsibility for the condition of Doris, he freely admitted illicit relations with Amy. It was upon the strength of these statements of his that the present prosecution originated. As a witness on this trial, he denied his illicit relations with Amy; he denied any

recollection of any admissions made by him in the grand jury room as testified to by the State's witnesses. He also testified that he had been put in great fear in the grand jury room, and that he suffered great perturbation therefrom, in that the county attorney in the course of the conference had assaulted him angrily and had struck him in the face, and that as a result of his fright he had little recollection of what, if anything, he said on the subject. At the time of this occurrence, his brother sat outside of the grand jury room. He testified on this trial that he heard the noise of the altercation within. On cross-examination of the sheriff, as a witness for the State, he testified that there was an altercation and that the county attorney did grasp the hat of the defendant and throw it to the floor. He disclaimed any observation that the county attorney struck the defendant. The altercation arose out of a colloquy between the defendant and Doris, wherein she charged him with responsibility for her condition, and wherein he denied it vehemently and called her a "damned liar." The sheriff testified in substance that it was this epithet applied to Doris that stimulated the aggression of the county attorney. The county attorney did not testify in the case. Upon this state of the record, the conduct complained of began, with his cross-examination of Will Gustoff, brother of the defendant. This is the witness who had testified that, as he sat outside the grand jury room, he had heard the voice of the county attorney in loud tones. We quote from the record as follows:

"Q. And this loud talking that you distinguished as my voice continued for at least five minutes, you say? A. Yes, sir. Q. You say that on your oath, just the same as you have said all the rest? A. Yes,sir. Q. You couldn't be mistaken about that? A. No, sir. Q. You are saying that here because you are a witness under oath, wanting to be fair to everybody? A. Yes, sir. Q. You mean that statement? A. Yes, sir. Q. Five minutes? A. I don't mean exactly five minutes, but near that. Q. Approximately that? A. Yes, sir. Q. On your oath as a witness before Almighty God, from whom you swore, you state that to be a fact? A. Yes, sir. Q. If you do, then I am through with you, and you may go. Mr. Howard: I move to strike the statement of counsel from the record as being out of

place and an attempt to interject some prejudice into the record here and an attempt to unfairly discredit this witness. County Attorney: If he is (not)? discredited here in court, some day he will be. Mr. Howard: I take exception to that remark of the counsel and ask the court to strike it from the record and admonish the jury that it is improper and that they shall not give it any consideration. The Court: The statements made by the county attorney which are in the record may be stricken. More than that, the jury is admonished not to consider any statements made by counsel on either side in this case in your deliberations in this case.''

The intimations contained in the foregoing were renewed on the later cross-examination of the defendant himself. We quote the following record:

"Q. You understand what an oath is, don't you? A. What? Q. What an oath is. You took an oath to tell the truth? A. Yes, sir. Q. You know what that was? A. Yes, sir. Q. Now, when you say that you never told anybody in that office there that night that you never had had intercourse with Amy Kirk, you do that on your oath, do you? Mr. Howard: Objected to as incompetent, immaterial, and irrelevant and assumes something not shown by the record. This witness has said that he didn't know,—he didn't have any knowledge of making such statements,—but if he did, he didn't realize he was making them; and in view of the law with reference to the treatment by an officer of the rights of a prisoner, and forcing an admission from them like this, and the condemnation of the court for it, we insist that this question now is absolutely improper. This witness says he didn't realize it, and it assumes a state of facts not shown by the record. County Attorney: Mr. Howard said in view of the *force. I have a right to say, so help me God, there never was any force, and it's a damned lie.* Mr. Howard: I make a motion to strike the statement of counsel from the record, so far as this court is able, to carry out the rank prejudice that counsel has attempted to seek into the record by this court doing everything it can; but I now say that it is prejudice that this court can't remove in the trial of this case, and I ask the court to take the county attorney in hand for making such a statement as that. County Attorney: My remarks

are addressed to Mr. Howard. I am attempting—Mr. Howard assumes that there has been a showing here that there was force used, and I have a right to reply to it. I have some rights here, too.

"The Court: The remarks made by you here in the presence of the jurors were highly improper, County Attorney, and the court admonishes you to not make any more statements of that nature; and the jury is admonished not to consider or pay any attention to the remarks made by the county attorney, and you must not consider same in your deliberations in this case.

"The Court: Objection sustained. (Plaintiff excepts.)

"County Attorney: Q. *You know, of course, I can't go on the witness stand, don't you?*

"Mr. Howard: Objected to as incompetent, irrelevant, and immaterial, and not cross-examination.

"The Court: Objection sustained. (Plaintiff excepts.)

"Q. You say on your oath that you never had had sexual intercourse with Amy Kirk? A. I do. Q. You say—you are on your oath before Almighty God? A. Yes, sir. Q. Did Mr. Howard ever tell you how far you would have to go in denying this?

"Mr. Howard: Objected to as incompetent, immaterial, and irrelevant; not proper cross-examination, and it is highly improper to ask such a question.

"The Court: You may answer. (Defendant excepts.)

"A. He never did."

It will be noted that after the severe admonition of the court, the attorney put to the witness the following question: "You know, of course, I can't go on the witness stand, don't you?" This question had no function to serve except as an intimation of fact to the jury that the attorney was under disability to testify on the question in dispute.

The net result of this episode was that the county attorney had been able to get before the jury an impassioned denial of the testimony of witnesses without subjecting himself to the witness stand. The language used was not only unprofessional, but disgraceful. It can not be known what its influence on the jury was.

It is urged in justification that the county attorney was

822

provoked to his conduct by improper conduct of one of defendant's attorneys. We think that some of the objections made on behalf of the defendant were without merit, and that they contained recitals of fact that were not warranted. As to these, the State was fully protected by the proper rulings of the court. These were no justification for the great lapse of decorum on the part of the county attorney. For the reason herein indicated, a new trial must be ordered.

The judgment below is accordingly reversed, and the cause remanded.

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.